# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JAMES R. TAYNOR, ) | |
| ) | CASE NO. 5:12-cv-01782 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff James R. Taynor ("Taynor") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Taynor's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

## I. Procedural History

On July 2, 2009, Taynor filed an application for POD, DIB, and SSI alleging a disability

onset date of July 17, 2008. (Tr. 9.) His application was denied both initially and upon reconsideration. Taynor timely requested an administrative hearing. *Id*.

On February 1, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Taynor, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 9.) On June 8, 2011, the ALJ found Taynor was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. (Tr. 17-19.) The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age forty-four (44) at the time of his administrative hearing, Taynor is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563, 416.963(c). Taynor has a limited education and past relevant work as a material handler, delivery driver, traffic controller, dispatcher, machine operator, security guard, and truck driver. (Tr. 17.)

### *Hearing Testimony*

At the hearing, the ALJ posed the following hypothetical to the VE:

> I want you to assume an individual that can perform light work. That is lifting and carrying of 20 pounds occasionally, lifting and carrying up to 10 pounds frequently. Stand/walk for up to four hours and sit for up to six hours during an eight-hour day with normal breaks.... So bilateral foot control only occasional. Never climb ladders, ropes or scaffolds, occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch and never crawl. The claimant would be limited to jobs that can be performed while using a hand held assistive device for uneven terrain or prolonged ambulation. They should avoid exposure to all extreme cold and avoid moderate exposure to moving hazardous machinery and even moderate exposure to unprotected heights.

(Tr. 57.) The VE testified that such an individual could perform Taynor's past relevant work as a dispatcher, but none of his other past work. (Tr. 57-58.) In addition, according to the VE, such

an individual, considering Taynor's age, education, and work experience, could perform the jobs of an information clerk, office helper, and ticket seller. (Tr. 58-59.) The VE testified that the addition of a sit/stand at will option to the above hypothetical did not alter the ability to perform the jobs identified, except for Taynor's past work as a dispatcher. (Tr. 59.)

The ALJ posed another hypothetical that incorporated all the previous limitations, including the sit/stand at will option, but reduced the exertional level of the hypothetical individual to sedentary. (Tr. 59-60.) The VE testified that such an individual could perform the jobs of a polisher, order clerk, and a ticket taker. (Tr. 60.)

In response to a question asked by Taynor's counsel, the VE testified that if the hypothetical individual also required the ability to elevate his legs as needed, potentially up to six hours a day, that no jobs would be available without an accommodation. (Tr. 61.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not

3

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Taynor was insured on his alleged disability onset date, July 17, 2008, and remained insured through the date of the ALJ's decision. (Tr. 11.) Therefore, in order to be entitled to POD and DIB, Taynor must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Taynor established medically determinable, severe impairments, due to right knee osteoarthritis and left knee osteoarthritis status-post left knee replacement. (Tr. 11.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 13.) Taynor was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. (Tr. 13, 17.) The ALJ then used the Medical Vocational

---

disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Guidelines ("the grid") as a framework and VE testimony to determine that Taynor was not disabled. (Tr. 17-18.)

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

5

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

*Treating Physician*

Taynor argues that the ALJ erred by failing to give good reasons for ascribing little weight to the opinion of his primary care physician, Scott D. Williams, M.D.  (ECF No. 15 at 11-15.)

Under Social Security regulations, the opinion of a treating physician is entitled to

controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2] Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

---

[2] Pursuant to 20 C.F.R. §§ 404.1527(c) & 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

On December 3, 2010, Dr. Williams completed a questionnaire concerning Taynor's ability to perform physical work-related activities, which provided that Taynor could lift/carry less than ten pounds both frequently and occasionally. (Tr. 713-15.) Dr. Williams further opined that Taynor could stand/walk for less than two hours (in five minute increments) and sit for about two hours (in ten minute increments) in an eight-hour workday. *Id*. He indicated that Taynor required a sit/stand at will option and may need to lie down at unpredictable intervals during a work shift. (Tr. 714.) Dr. Williams reported that his findings were supported by status post left knee total replacement, right knee medial meniscus tear, and right knee chondromalacia. *Id*. Dr. Williams believed Taynor could never twist, stoop, bend, crouch, or climb ladders, and could only occasionally climb stairs. *Id*. Furthermore, Taynor's impairments affected his ability to push/pull. *Id*. Dr. Williams stated that Taynor should avoid concentrated exposure to fumes, odors, dusts, gases, perfumes and solvents/cleaners; should avoid even moderate exposure to extreme heat and high humidity; and should avoid *all* exposure to extreme cold. (Tr. 715) (emphasis added). Dr. Williams explained that Taynor needed a brace and a cane, needed to frequently rest, and needed to elevate his legs to alleviate pain. *Id*. Finally, Dr. Williams opined that Taynor would miss more than four days per month due to his impairments or the treatment of his impairments. *Id*.

During the hearing, the ALJ acknowledged that if he accepted Dr. Williams's assessment as credible, Taynor would be disabled due to an inability to sit, stand, and/or walk for a combined total of eight hours. (Tr. 60-61.) The ALJ credited Dr. Williams's opinion as follows:

> The Social Security Regulations provide that controlling weight must be given to the opinion of the treating physician if the opinion is well supported and not inconsistent with the other substantial evidence of record (See 20 CFR 404.1527 and 416.927 and SSR 96-2p). Based on this criterion, the undersigned affords

8

>this opinion little weight. While Dr. Williams is an acceptable medical source, his opinion is not fully credible. There are limitations in Dr. Williams' opinion that are not even related to the claimant's impairments, such as the need to avoid dusts, gases, and perfumes. Dr. Williams is also not a specialist in this area, and his prescribed course of treatment for the claimant is not consistent with his incredibly limiting opinion. Moreover, Dr. Williams' opinion is not consistent with the claimant's presentation during the hearing. The claimant sat for nearly an entire hour hearing without getting up or significantly shifting positions, despite the undersigned's encouragement that he does [sic] so if he needed to. The claimant also testified that he could sit for 45 minutes during a car ride, which is inconsistent with Dr. Williams' conclusion that the claimant can only sit for 10 minutes at a time.

(Tr. 16.)

First, the ALJ's conclusory statement that Dr. Williams's opinion was inconsistent with substantial evidence of record and subsequent citation to the appropriate regulations does not, in and of itself, constitute "good reasons" for rejecting his opinion. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source's opinion where the ALJ merely stated, without explanation, that the evidence of record did not support the severity of said limitations); *accord Dunlap v. Comm'r of Soc. Sec.*, 2012 U.S. App. LEXIS 26483 (6th Cir. Dec. 27, 2012); *Bartolome v. Comm'r of Soc. Sec.*, 2011 WL 5920928 (W.D. Mich. Nov. 28, 2011) (noting that merely citing to "the evidence" and referring to the appropriate regulation was insufficient to satisfy the "good reasons" requirement).

Second, the ALJ also ascribed little weight to Dr. Williams's opinion because he is not a specialist. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). Although there was treatment rendered by a specialist, John Riester, M.D., the ALJ has not identified any

9

opinion from Dr. Riester that conflicts with or undermines Dr. Williams's assessment of Taynor's functional limitations.[3] In the absence of conflicting evidence from a specialist, this Court does not believe that the ALJ may disregard Dr. Williams's opinion solely because he is not a specialist. Non-specialists remain acceptable medical sources under the regulations, and disregarding such an opinion, especially where there is no clear contrary opinion of a specialist, fails to satisfy the "good reasons" requirement. To uphold such a finding would eviscerate the treating physician rule, as an ALJ could simply point to the lack of a specialty in a given field to set aside a treating source's opinion. *See, e.g., Moreland v. Astrue*, 2009 WL 735776 at *5 (E.D. Ky. Mar. 18, 2009) (finding that the ALJ's failure to proffer any rationale for rejecting a treating physician's opinion other than his lack of specialization was insufficient to satisfy the "good reasons" requirement); *Price v. Comm'r of Soc. Sec.*, 2009 WL 973496 at *12 (S.D. Ohio Apr. 9, 2009) (finding that the ALJ's rejection of a treating physician's opinion "for the sole reason he was not a mental health professional, sidesteps the reason-giving requirements of the Regulations," which require not just an explanation, but a good explanation) (citations omitted); *accord Marsh v. Astrue*, 2011 WL 4809271 at *5 (N.D. Ohio Oct. 11, 2011); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (finding that the ALJ's rejection of a treating source's opinion on the basis that he was not a mental health specialist was insufficient where that finding was unsupported by other evidence in the record.

Third, the ALJ indicated that Dr. Williams's treatment of Taynor was not consistent with the limitations he ascribed to Taynor. (Tr. 16.) Presumably, the ALJ's finding is based on her

---

[3] Dr. Riester performed total left knee replacement surgery on Taynor in January of 2009. In March of 2009, Dr. Riester recommended a total knee replacement surgery on Taynor's other knee. (Tr. 15.)

earlier observation that Dr. Williams did not give Taynor knee injections or perform any other more invasive treatment.  (Tr. 15.)  The ALJ's assumption – that Taynor's limitations should have resulted in different treatment – is not based on any identifiable evidence of record.  Furthermore, the ALJ did not discuss any of the evidence cited by Taynor indicating that his failure to undergo additional surgery, receive additional pain injections, or to undergo additional physical therapy may have been caused by an inability to pay for such treatment after the loss of workers' compensation coverage.  (ECF No. 15 at 13, citing Tr. 358, 389, 393, 423.)  Treatment notes from March 19, 2009, clearly indicate that "patient needs appro [sic] from workers comp and scheduled for a right total knee replacement surgery."  (Tr. 393.)

Moreover, ALJs are not trained medical experts and it is well-established that they may not substitute their own opinion for that of a medical professional.  *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted)); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2nd Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's

opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). Essentially, the ALJ rejected Dr. Williams's opinion because she expected some sort of treatment greater than what was actually rendered. The record appears to support the need for additional treatment, including surgery, but also indicates that Taynor lacked the means to follow through.

In a related finding, the ALJ noted that Taynor did not significantly shift positions during an hour long hearing. (Tr. 16.) She also noted that Taynor testified he could sit in a car for up to forty-five minutes – a statement ostensibly inconsistent with Dr. Williams's opinion. *Id*. The ALJ's latter statement, however, is incomplete. Taynor testified that he drives if he must, but did so only twice in the previous month. (Tr. 43.) *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) (a claimant's ability to engage in "intermittent activities of relatively short duration does not negate the fact that Plaintiff is unable to regularly engage in work due to his pain.") While an ALJ can surely discount a treating doctor's opinion as to a claimant's limitations where those limitations are more restrictive than a claimant's self-reported limitations, this Court fails to see how an ability to sit in a car for forty-five minutes once or twice a month completely undermines Dr. Williams's opinion. In addition, the ALJ's personal observations of the claimant at the hearing are not an appropriate basis to set aside a treating physician's opinion. Such observations may factor into assessing the claimant's *credibility*, but even in those instances, a claimant's credibility should not be discarded solely on the basis of the ALJ's observations. In the credibility context, the Sixth Circuit has explained as follows:

> While we recognize that observation and credibility are factors in this complicated equation, and as such are material, relevant, and admissible, we cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited

12

> "sit and squirm" test. We do not imply that there was no evidence in the record from which the ALJ could not draw the inference of a lack of pain. However, the ALJ must cite some other evidence for denying a claim for pain in addition to personal observation.

*Weaver v. Sec'y of Health & Human Servs.,* 722 F.2d 310, 312 (6th Cir. 1983); *Harris v. Comm'r of Soc. Sec.*, 2013 WL 1187925 (E.D. Mich. Feb. 28, 2013) ("the ALJ's 'sit and squirm' observation that plaintiff was able to sit for the 39–minute hearing without obvious signs of pain is too minor of an inconsistency to support rejection of plaintiff's complaints"), report and recommendation adopted, 2013 WL 1192301 (E.D. Mich. Mar. 22, 2013). Notably, the Commissioner cites no law suggesting that an ALJ's personal observations of a claimant during a hearing constitutes a "good reason" sufficient to reject a treating physician's opinion. Another district court in this circuit has observed that "[i]f the ALJ uses the 'sit and squirm' test, or his own medical perceptions, or even relies only on the opinions of non-examining State Agency physicians as his only bases for discounting a treating physician' s supported findings, then the adjudication is tainted." *Godsey v. Astrue*, 6, 2010 WL 625375 (E.D. Tenn. Feb. 17, 2010).

The ALJ also found Dr. Williams's opinion was "not fully credible" because "[t]here are limitations in Dr. Williams' opinion that are not even related to the claimant's impairments, such as the need to avoid dusts, gases, and perfumes." (Tr. 16.) It is unclear whether the ALJ was merely rejecting only that portion of Dr. Williams's opinion related to the need avoid concentrated exposure to dust, fumes, odors, and gases, or whether the ALJ was rejecting other, unrelated portions of Dr. Williams's opinion based on the inclusion of these environmental limitations. *If* the ALJ was implying that Dr. Williams purposely included limitations that had no medical basis, rendering Dr. Williams' whole opinion unreliable, such a conclusion is untenable given the evidence of record. While there may be cases where an opinion including

13

such unsupported limitations warrants an outright rejection, that is not the case at bar. Dr. Williams's treatment notes contain a diagnosis of asthma and further note a history of asthma, which could account for the ascribed environmental limitations.[4] (Tr. 414, 423, 630.)

The Commissioner does not dispute that there is a diagnosis of asthma, but argues that the form filled out by Dr. Williams, wherein he noted the presence of environmental limitations, did not actually identify asthma as the source of the limitations. (ECF No. 16 at 16, citing Tr. 713-15.) Section 10 of the form filled out by Dr. Williams merely asks the physician what environmental restrictions, if any, are applicable. (Tr. 715.) The form does not ask for, nor does it provide any space for a physician to indicate which medical impairments cause the environmental restrictions. (Tr. 715.) Furthermore, the ALJ is presumed to have reviewed the medical evidence of record which indisputably contains a diagnosis of asthma.

None of the reasons set forth in the ALJ's opinion, on their own or cumulatively, satisfy the "good reasons" requirement of the treating physician rule. Because a remand is necessary, Taynor's remaining assignments of error are moot and need not be addressed.

However, the Court is troubled by the ALJ's analysis of the opinion of Paul Steurer, M.D., a non-treating but examining source who specializes in orthopaedic issues. (Tr. 16. 764.) At the request of the ALJ, Dr. Steurer conducted an examination of Taynor on March 28, 2011 – almost two months after the hearing. (Tr. 759.) Dr. Steurer concluded as follows: "Right now, Mr. Taynor remains disabled. He needs to undergo further surgery on the right knee. He would really be limited to basically sedentary work." (Tr. 765.) Dr. Steurer's conclusions are

---

[4] The Court has no opinion as whether the severity of Taynor's asthma justified the alleged need to avoid concentrated exposure to dust, odors, gases, and fumes. However, it can hardly be disputed that asthma is capable of causing such limitations.

14

inherently contradictory, as an individual who could perform sedentary work is not usually disabled. Curiously, the ALJ rejected Dr. Steurer's opinion that "Taynor remains disabled" until he undergoes right knee surgery. (Tr. 16, 765.) The ALJ found that such an opinion was an administrative decision reserved for the Commissioner. (Tr. 16.) Nonetheless, the ALJ gave great weight to Dr. Steurer's conclusion that Taynor would be limited to sedentary work, though an RFC finding is also an administrative decision reserved for the Commissioner. (Tr. 16, 765.) The ALJ's reliance on a non-treating physician's self-contradictory conclusion to decide Taynor was not disabled is misplaced. At the very least, the ALJ should have sought clarification from Dr. Steurer.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: April 17, 2013